**SO ORDERED: April 12, 2006.**

_____
**Basil H. Lorch III
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Buehler Foods, Inc., et al., | ) | Case No. 05-70961-BHL-11 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**ORDER**

This matter comes before the Court on Buehler of Kentucky LLC's (the "Debtor") **Second Amended Application to Employ the Gordon Company, Inc., as Store Fixture and Equipment Liquidating Agent** (the "Application") filed October 25, 2005, and the **Limited Objection to Debtor's Second Amended Application to Employ the Gordon Company, Inc., as Store Fixture and Equipment Liquidating Agent** (the "Objection") filed October 27, 2005, by Catamount LS-KY, LLC, a Nevada limited liability company, as assignee of Helen Funk and Peter W. Merner, as nominee for John H. O. LaGatta, as successor to Flask Corporation (collectively, "La Gatta"). On November 9, 2005, the parties submitted and the Court entered an order (the "Order") approving their joint **Stipulation in Resolution of Limited Objection to Debtor's Second Amended**

**Application to Employ the Gordon Company, Inc., as Store Fixture and Equipment Liquidating Agent** (the "Stipulation"). Pursuant to the Stipulation and Order, the Court held an evidentiary hearing on those matters unresolved by the Stipulation on December 6, 2005 (the "Hearing").

Background

The Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code on May 4, 2005. Pursuant to the February 10, 1984, Lease and Sublease Agreement, as amended by the October 10, 1986, First Lease Modification Agreement, and the January 30, 1992, Second Lease Modification Agreement by and between Winn-Dixie Charlotte, Inc., and La Gatta for what the Debtor refers to as Store No. 1673 at 120 Midland Boulevard, Shelbyville, Kentucky (the "Shelbyville Premises"), La Gatta leased the Shelbyville premises to Winn-Dixie. Pursuant to the October 18, 2004, Assignment of Lease Agreement, Winn-Dixie assigned its interest in the leased Shelbyville Premises to the Debtor.

On October 25, 2005, the Debtor filed its Application, wherein it sought to employ the Gordon Company to liquidate furniture, fixtures, and equipment at the Shelbyville Premises. On October 27, 2005, La Gatta filed its Objection to the Application, claiming that certain of the furniture, fixtures, and equipment were part of the realty constituting the Shelbyville Premises, and as such belonged to La Gatta and should not be liquidated. On November 1, 2005, the Court entered its Order Authorizing and Approving Debtor's Second Amended Application to Employ the Gordon Company, Inc., as Fixture and Equipment Liquidating Agent, directing La Gatta and the Debtor to attempt to resolve their disputes regarding the fixtures and equipment. At the November 9, 2005, hearing, the parties advised the Court that while they had been unable to resolve their dispute, they

2

had narrowed the items in dispute as set forth in the Stipulation, and La Gatta agreed to escrow $25,000.00 with respect to those disputed items pending this Court's determination of the ownership of them. Pursuant to the Stipulation, the Court held the Hearing on December 6, 2005.

Analysis

The dispute arises from the parties' differing constructions of provisions under the lease documents in light of Kentucky fixture law. The provisions are as follows:

1. Paragraph 1 of the Lease:

    > In consideration of the rents and covenants herein stipulated to be paid and performed, Lessor hereby demises and lets to Lessee, and Lessee hereby demises and lets from the Lessor, for the terms herein described, the premises (herein called the Leased Premises) consisting of (i) the land described in Schedule A hereto, (ii) all improvements constructed and to be constructed thereon (including all building equipment and fixtures, if any, owned by Lessor, but excluding trade equipment and trade fixtures owned by Lessee), and (iii) all easements, rights and appurtenances relating thereto, all upon the terms and conditions herein specified.

2. Paragraph 11(b) of the Lease:

    > Lessee may, at its expense and after not less than 60 days written notice to Lessor of its plans (i) construct additional improvements upon the Leased Premises and (ii) install, assemble, or place any items of machinery or equipment upon the Leased Premises, in each case upon compliance with all the terms and conditions set forth in paragraph 11(a). All such improvements shall be and remain part of the realty and the property of the Lessor and subject to this Lease. Such machinery or equipment shall be and remain the property of the Lessee and Lessee may remove the same from the Leased Premises at any time prior to the termination of this Lease, provided that Lessee shall repair any damage to the Leased Premises resulting from such removal.

3. Second Lease Modification Agreement, p. 3.

    > Whether or not such Coolers have walls that are exterior to the Original Improvements or the Additional Improvements, Lessor and

3

> Lessee recognize that such Coolers are, or may be, real estate or fixtures to real estate under Kentucky law. Lessor and Lessee agree that any such Coolers shall constitute part of the Additional Improvements. [ ] If no default or Event of Default shall have occurred and be continuing, Lessee may remove such Coolers, provided that Lessee repairs any damage to the building....

La Gatta would have the Court analyze the lease in light of *In re Helfin*, 326 B.R. 696, 701 (Bankr. W.D. Ky. 2005). While *Helfin* sets out a three part test for determining if an item is a fixture, the test set out there is no different than the one set forth in the case put forth by the Debtors, *Bank of Shelbyville v. Hartford*, 104 S.W.2d 217 (Ky. App. 1937). Apart from the test common to both it and *Bank of Shelbyville*, *Helfin* is inapplicable here because the question there pertains to additions to residential real estate and does not deal with trade versus building fixtures. Under Kentucky law, the definition of "trade fixture" is well-settled:

> a term usually employed to describe property which a tenant has placed on rented real estate to advance the business for which it is leased and which may, as against the lessor, be removed at the end of the tenant's term. Articles attached by the tenant to the demised premises for trade purposes are 'trade fixtures.' To constitute any chattel that has been attached to the freehold a 'trade fixture,' it is only necessary that it be devoted to what is known in the law of fixtures as a trade purpose, and the form or size of the annexed chattel is immaterial.

*Id.* at 219 (internal citations omitted). The elements of the test, dating back even prior to *Bank of Shelbyville*, but set out there, for "determining whether an article is a fixture are: (1) Annexation to the realty, either actual or constructive; (2) adaptation or application to the use or purpose to which that part of the realty is connected or appropriated; and (3) intention to make the article a permanent accession to the freehold." *Id.* at 218 (citations omitted.). Kentucky courts emphasize that the key factor is the intention of the parties, *see, Tarter v. Turpin*, 291 S.W.2d 547, 548 (Ky. 1956), given that, "[a]s between landlord and tenant...[,] the greatest latitude and indulgence are to be allowed in

4

favor of the tenant's claim to have particular articles considered as personal chattels rather than as part of the freehold," *Warren Post No. 23, Am. Legion v. Jones*, 196 S.W.2d 726, 729 (1946).

La Gatta is correct that the three part test in Kentucky is nearly identical to that used in Indiana, but their offer of an Indiana bankruptcy case, *In re Vic Bernacchi & Sons, Inc.*, 170 B.R. 647 (Bankr.N.D.Ind. 1994), as a guide to understanding and applying the intent test is not very helpful to their cause. The court in *Bernacchi* said that the question regarding "intention" is "whether the item of personal property is essential to the completeness of the real property in view of the intended use of the realty [; i]n other words, removing a fixture must 'disorganize and disable the plant of which it is a part.'" *Id.* at 562. Furthermore, "[a]nnexation is the least significant factor of the test [; a] particular manner of annexation does not compel a conclusion that an item of personal property is or is not a fixture." *Id.*

The items in question were added by Winn-Dixie to what La Gatta claims was a functioning grocery store. If the Shelbyville Premises was a functioning grocery store prior to the items' annexation, then their subsequent removal would not 'disorganize and disable' the store. That their removal may cause damage to the store necessitating repairs does not change the items' status as trade fixtures, as Paragraph 11(b) of the Lease makes clear.

## Conclusion

Under the three-part test, therefore, the items are not "building equipment and fixtures" because there is no evidence that the Lessees intended to make the items a permanent accession to the real estate. By virtue of the Stipulation, the Debtors have agreed not to remove them, but the Court's determination that they are trade fixtures owned by the Debtors means that the $25,000.00 escrowed by La Gatta in consideration of not removing them now belongs to the Debtors.

###

<u>Distribution</u>:
Debtor's Counsel
La Gatta's Counsel